*Mch*



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Paul E. Budlow
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

March 13, 2026

Maggie Grace, Esq.
Christina Wong, Esq.
Office of the Federal Public Defender
Tower II, 9th Floor
100 South Charles Street
Baltimore, Maryland 21201-2705

Re:     *United States v. Erik Lee Madison,*
        <u>Criminal No. MJM-25-364</u>

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Erik Lee Madison (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by March 20, 2026, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.     The Defendant agrees to plead guilty to Count One of the Indictment, charging the Defendant with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a), and Count Seven of the Indictment, charging the Defendant with Cyberstalking, in violation of 18 U.S.C. §§ 2261A(2) & 2261(B)(a). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offense

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the dates specified in the Indictment, in the District of Maryland, the Defendant,

1

Count One (Sexual Exploitation of a Child):

 a. Knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

 b. For the purpose of producing a visual depiction of such conduct; and

 c. The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

Count Seven (Cyberstalking):

 d. With intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass or intimidate another person; and

 e. The Defendant used the mail/any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that:

 i. placed that person in reasonable fear of death of or serious bodily injury to that person, an immediate family, member, or a spouse or intimate partner, or that person's animal; or

 ii. caused, attempted to cause or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member, or spouse or intimate partner;

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life (min. 5y) | $250,000 | $100 |
| 7 | 18 U.S.C. §§ 2251A(2) & 2261(b)(5) | n/a | 10 years | 3 years | $250,000 | $100 |

 a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

2

Rev. August 2018

   b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259(b)(2)(b).

   d.  Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

   e.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   f.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   g.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Sex Offender Registration</u>

4.  The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

Rev. August 2018

## Waiver of Rights

5.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

4

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.      This Office and the Defendant understand, agree, and stipulate to the Stipulation of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and is incorporated by reference herein. The parties further stipulate and agree, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.2(c), that the Stipulation of Facts establishes the commission of additional offenses, and the plea agreement shall be treated as if the Defendant had been convicted of additional counts charging those offenses. The parties stipulate and agree to the following applicable sentencing guideline factors:

Groups One through Five: Sexual Exploitation of Minor Victim 1 on more than Five Days, including December 9, 2024
(Counts One and Two), and Agreed Conduct:

a.      The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

b.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. [Subtotal: 34].

Rev. August 2018

c.      Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 36.]

d.      Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 38].

e.      Pursuant to U.S.S.G. § 3A1.1(b)(1) and Application Note 3, there is a two (2) level increase because the defendant knew or should have known that the victim of the offense was particularly vulnerable for reasons unrelated to age. [Subtotal: 40].

f.      There are five groups for Minor Victim 1 because Minor Victim 1 was exploited on more than 5 dates, and the separate acts of exploitation of the same minor on separate dates do not group. All of the groups for Minor Victim 1 have the same guidelines calculations as set forth above.

Group Six: Sexual Exploitation of Minor Victim 2
(Agreed Conduct: Counts Three and Four, September 6, 2025 through September 8, 2025):

g.      The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

h.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. [Subtotal: 34].

i.      Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 36.]

j.      Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 38].

Group Seven: Sexual Exploitation of Minor Victim 3
(Agreed Conduct, Count Five and Six, September 5, 2025 through September 18, 2025):

k.      The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

l.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. [Subtotal: 34].

m.      Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 36.]

Rev. August 2018

n.      Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 38].

Group Eight: Cyberstalking of Minor Victim 3:
(Agreed Conduct: Count Seven, September 5, 2025 through September 18, 2025):

o.      Pursuant to U.S.S.G. § 2A6.2(a), the base offense level is 18.

p.      Pursuant to U.S.S.G. § 2A6.2(B)(1), there is a four (4) level increase because more than one of the aggravating factors in the subdivisions apply, including the following:

> i.   § 2A6.2(b)(1)(B) because the offense involved bodily injury;
>
> ii.  § 2A6.2(b)(1)(D) because the offense involved the possession, or threatened use, of a dangerous weapon; and
>
> iii. § 2A6.2(B)(1)(E) because the offense involved a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim.

[Subtotal: 22].

Groups Nine through Fourteen - Additional Groups of Sexual Exploitation of a Child (Agreed Conduct: Minor Victims 4, 5, 6, 7, 8 and 10):

q.      As referenced above, this Office and the Defendant agree that the stipulated factual basis involved violations of 18 U.S.C. § 2251 against 6 additional victims, and that each offense involving each separate victim constitutes a separate group. Each of those additional victims were between ages 13 and 15, and the total offense level for each is 36 or 38, depending on whether the offense involved a sex act.

Grouping:

r.      Pursuant to Pursuant to U.S.S.G. § 3D1.2, Pursuant to U.S.S.G. §§ 3D1.2(d) sexual exploitation of the same minor victim on different days, or of a different minor victim, do not group.

s.      Groups One through Five are the highest offense level (40), resulting in five units. The offense levels for Groups Six, Seven, and Nine through Fourteen (36 or 38) are from 1 to 4 levels less serious, resulting in 8 additional units. The offense level for Group Eight (22) is 9 or more levels less serious, resulting in zero additional units, resulting in a total of 13 units. Thus, pursuant to U.S.S.G. §§ 3D1.4, 5 levels are added to the highest offense level. [Subtotal: 45].

7

Rev. August 2018

8. This Office does not oppose a two (2) level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one (1) level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. [Total: 42].

Chapter Four Enhancement:

9. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. [Total: 47].

10. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

12. At the time of sentencing, this Office agrees to recommend that the Court impose a sentence of thirty-five (35) years' imprisonment in the custody of the Federal Bureau of Prisons. This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release.

13. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

14. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Rev. August 2018

## Waiver of Appeal

15.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

16.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

17.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

a.    White Apple iPhone 15, S/N: JVQ3QHWDH2;

b.    Cyber Power PC model C Series CEC model, C545021MB478119; and

c.    ~~Black Apple iPhone SE, s/n: CLQ5MW126D.~~  *PJB  UW  EM*

18.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding

9

forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

19.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

20.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

21.     The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

22.     The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Restitution in Cases Involving the Sexual Exploitation of Children

23.     Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant

10

agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

## Additional Special Assessments in Sex Crimes Cases

24.    Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other abuse of children), the Defendant must pay an additional special assessment of $5,000, unless the Defendant is indigent.

25.    Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess: (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

## Defendant's Conduct Prior to Sentencing and Breach

26.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

27.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither

11

the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

28.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

29.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Paul E. Budlow
Assistant United States Attorney

12

Rev. August 2018

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3/17/26
Date

*Erik Madison*
Erik Lee Madison

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/17/26
Date

*Maggie*
Maggie Grace, Esq.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/17/26
Date

*Chris*
Christina Wong, Esq.

13

*Mch*

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Erik Lee Madison ("Madison"), age 19 to 20 at the time of the offenses, is a resident of Halethorpe, Maryland. Madison was an adherent of "764", a group that, among other things, uses the internet to create and share extreme content such as gore, violence, child pornography, and engage in the extortion and blackmailing of typically vulnerable teenage victims. As detailed below, between no later than November 2024 and November 6, 2025, Madison used the internet to sexually exploit minor females and encouraged the minor females to engage in self-harm.

Madison's conduct included the use of the internet to cause minor females to produce or stream sexually explicit conduct, to cut themselves with razors, to cut signs and words on their bodies, to use their blood to write various signs and Madison's monikers on a wall and then stream this conduct to Madison. Madison also encouraged victims to injure animals. Madison extorted the victims through a variety of methods, including threatening to harm the victims and the victims' families, threatening to "leak" or disseminate depictions of the victims engaging in cutting and sexually explicit conduct, threatening to "dox" the victims and family members, and threatening to "swat" victims and family members.[1]

The minor females Madison exploited were from various locations inside and outside of the United States.

### Minor Victim 1:

Summary of Madison's Victimization of Minor Victim 1:

Madison exploited Minor Victim 1 between November 2024 and at least June 2025. Madison was aware that Minor Victim 1 was 15 years old the entire time she had contact with Madison. Madison communicated with Minor Victim 1 using multiple messaging and social media applications, including Discord. Madison used a variety of Discord usernames and accounts including violentcore, addyrall, rwaping, Throat, Fraud, and others. Using those accounts, Madison coerced Minor Victim 1 to use a razor blade to cut her body, including the cutting of signs and words at Madison's direction. Madison also caused Minor Victim 1 to stream sexually explicit videos depicting her masturbating her exposed genitals. Madison's exploitation of Minor Victim 1 included communication in Discord groups where Madison caused Minor Victim 1 to engage in cutting and sexually explicit conduct on Discord "servers" or groups where numerous

---

[1] Doxing refers to the publishing private or identifying information about a particular individual on the internet as a means to harass, shame or intimidate victims. Swatting refers to the making of false reports to law enforcement in an attempt to bring about the dispatch of a large number of armed law enforcement to a particular address.

other individuals were present. In February 2025, Madison traveled to Minor Victim 1's residence and engaged in intercourse with Minor Victim 1, which he recorded.

<u>Madison's Victimization of Minor Victim 1:</u>

In November 2024, Minor Victim 1 was online "dating" another individual. On November 16, 2024, Madison joined the chat, and on the same day, demanded that Minor Victim 1 send videos of her cutting herself. Madison was aware that Minor Victim 1 had made the videos previously, and that the videos depicted Minor Victim 1 cutting herself and depicted Minor Victim 1's genitals. Madison threatened to "swat" Minor Victim 1's parents' homes if she refused to send the videos.

After they first met on Discord, Madison communicated with Minor Victim 1 daily. Madison coerced Minor Victim 1 to stream videos to Madison depicting Minor Victim 1 using a razor to cut herself, writing signs and names in her own blood, and to engage in sexually explicit conduct that exposed her genitals. Madison caused Minor Victim 1 to cut her tongue. Madison frequently threatened to "leak" Minor Victim 1's videos, which he recorded during the live streams. On more than five occasions, Madison directed Minor Victim 1 to engage in "esex," a term he used to refer to the live streaming of Minor Victim 1 engaged in sexually explicit conduct depicting her genitals.

With respect to Count 1, on December 9, 2024, using the Discord account, "violentcore" and the screen name "Throat," Madison initiated a sexual conversation with Minor Victim 1. During the conversation, Madison instructed Minor Victim 1 to "set the camera up and spread ur pussy."

Madison initiated two in-person meetings with Minor Victim 1, ~~for the purpose of engaging in sex acts~~. The first meeting was on December 26, 2024, when Madison traveled to Minor Victim 1's residence. Madison met Minor Victim 1 outside of her residence and gave her gifts. Madison was aware that Minor Victim 1 was going to be admitted to a psychiatric hospital the next day, because Minor Victim 1's mother had discovered her suicidal writings. Madison was fully aware of Minor Victim 1's mental health challenges and suicidal thoughts. Minor Victim 1 was admitted to a psychiatric hospital as planned on December 27, 2024. After Minor Victim 1 returned home from the hospital in January 2025, Madison resumed his attempts to cause Minor Victim 1 to cut herself and engage in "esex."

Also in January 2025, Madison told Minor Victim 1 about his belief that he was being investigated by law enforcement and told her that he planned on deleting devices and changing accounts to avoid detection. On January 23, 2025, Madison messaged Minor Victim 1, using the Discord account rwaping, "If u cheat I will k u", and "If u ever give anyone info on me I will k u." On January 21, 2025, Madison sent the following message to Minor Victim 1, "[Minor Victim 1] I really do mean it", "If u ever betray me I am going 2 kill you and everybody in ur household."

On February 8, 2025, using the Discord account "addyrall," Madison referred to himself as "Throat," ("This is throat"), and told Minor Victim 1 that he had more videos of Minor Victim 1 cutting and naked than anyone else had of Minor Victim 1.

Rev. August 2018

The following day, on February 9, 2025, Madison traveled to Minor Victim 1's residence and engaged in vaginal sex with Minor Victim 1 inside the residence. Madison used an iPhone to record the sex act. Madison was aware that Minor Victim 1 had not had intercourse prior to this encounter.

Madison continued to coerce Minor Victim 1 to live stream video of cutting and sexually explicit conduct in March 2025. In late March 2025, Minor Victim 1 was again admitted to a psychiatric hospital after disclosing that she had attempted suicide by overdose.

After her release from the hospital, Minor Victim 1 attempted to stop having contact with Madison. Madison then created numerous fake Instagram and other accounts to contact Minor Victim 1. Using these Instagram accounts, Madison threatened to send naked photos of Minor Victim 1 to her school and family. Madison also called Minor Victim 1's father on numerous occasions. On June 5, 2025, Madison called Minor Victim 1's father and said he was on his way to their house with a gun, and that he did not want "the feds involved" because he did not want to go to jail.

## Minor Victim 2:

Madison exploited Minor Victim 2 between September 6, 2025 and September 8, 2025. Minor Victim 2 was 14 years old at the time. Madison communicated with Minor Victim 2 using the Discord account "baphome1," which is a reference to Baphomet.[2] Madison told Minor Victim 2 that his name was "Leo."

Madison told Minor Victim 2 that he was a member of "764." Madison communicated with Minor Victim 2 in group Discord chats with other individuals. Madison coerced Minor Victim 2 to use a razor blade to cut her body, including the cutting of signs and words at Madison's direction. Madison also caused Minor Victim 2 to stream sexually explicit videos depicting her genitals, including depictions of Minor Victim 2 using her hand and a hairbrush to touch her genitals.

On September 6, 2025, while on a video call, Madison caused Minor Victim 2 to cut herself and to use her blood to "spell LEO big."

On September 7, 2025, Madison asked Minor Victim 2 to stream live video depicting her genitals, including the following messages:

| Madison: | i loved how soaked your bed was |
| --- | --- |
| Minor Victim 2: | It was messy :3 |

---

[2]    Baphomet is an occult symbolic goat-headed figure that often used by Satanists. Depictions and references to Baphomet were observed in numerous images and videos in Madison's iCloud account and in his bedroom.

3

| | |
|---|---|
| Madison: | yeah and i will use you whenever i fucking want |
| Madison: | yeah change your name to leos whore on discord now |
| Minor Victim 2: | That good?? |
| Madison: | yeah |
| Madison: | goodlsut |
| Madison: | slut |
| Madison: | make sure you shave today |
| Madison: | i love you slut |
| Minor Victim 2: | I gotta go now because my parents are mad im on my phone |
| *** | |
| Minor Victim 2: | But there i shaved!!^^ |
| Madison: | awww |
| Madison: | look at that cute little pussy |

Madison threatened to harm Minor Victim 2 and her family, to "swat" her residence, and to send her videos and images out to her family and friends if she did not comply with his demands to stream cutting and sexually explicit videos.

## Minor Victim 3:

Madison exploited Minor Victim 3 between September 5, 2025 and September 18, 2025. Minor Victim 3 was 14 years old at the time, and told Madison that she was 15 years old. Madison communicated with Minor Victim 3 on Roblox using the account Departed49, and then moved the communication to Discord, where he used the Discord account "baphome1." Madison told Minor Victim 3 that his name was "Leo" and that he was in the groups "764" and "Slit Town."

Madison asked Minor Victim 3 to use a razor blade to cut her body, including the cutting of signs and words at Madison's direction. Madison also asked Minor Victim 3 to live stream sexually explicit videos depicting her genitals. In a forensic interview, Minor Victim 3 stated that Madison showed her compilation videos that depicted other people using blood to write "Leo" on walls at Madison's direction, and that Madison paid her "Robux"[3] to coerce her to cut herself. Minor Victim 3 said that she wrote on the wall for Madison, but that she only pretended to cut herself and that she used red make up on the wall. Minor Victim 3 also disclosed that said that Madison told her that the "lowest age he would go" is 8 or 10 years old, and that Madison asked her to kill her sister's dog.

Madison sent the following messages to Minor Victim 3:

---

[3] Robux is a virtual in-game currency used on the Roblox platform, acting as in-game money for purchases. Robux can be purchased by users with U.S. currency, and can then be transferred between users.

September 7, 2025:

Madison :                           can you fuck your little pussy for me?

September 8, 2025:

Madison :                           wanna esex?

September 9, 2025:

Madison :                           you want me to ext you but you cant even cut properly

Minor Victim 3:                     I told you my razors aren't sharp fag

Madison :                           so, then cam up and play with your pussy

Madison also sent the following messages to Minor Victim 3 that were intended to cause substantial emotional distress to Minor Victim 3:

September 7, 2025:                  Madison asked to see Minor Victim 3's cutting injuries.

September 9, 2025:                  Madison told Minor Victim 3 that she can't cut properly

September 13, 2025:                 Madison asks Minor Victim 3 to cut: "can you cut today" and to draw on the wall.

September 14, 2025:                 Madison told Minor Victim 3 that he needs her to cut today and draw on the wall.

September 15, 2025:                 After Minor Victim 3 live streamed to Madison what appeared to be her cutting.  Madison told her that she did great.

September 16, 2025:                 Minor Victim 3 and Madison discussed Minor Victim 3 cutting.

**Minor Victim 4:**

Madison communicated with Minor Victim 4 between September 12, 2025 and September 14, 2025 as part of a group Discord chat.  Minor Victim 4 was 13 years old at the time.  Madison communicated using the Discord account "baphome1."  Madison participated in a group chat that attempted to get Minor Victim 4 to cut herself and to engage in sexually explicit conduct on video for the group.  Over the course of the 2 days, Minor Victim 4 was asked multiple times to go on camera and cut herself and to expose herself.  Minor Victim 4 was also asked to stab or burn a homeless person and hold up a paper that said "Leo MKY."   Members of the group, including

5

Madison, threatened to expose Minor Victim 4's conduct and to swat her family. Madison's texts during these chats included the following:

Madison:                they are about to see and your school is about to have cps involved

Madison:                its ok when your mother wakes up i will tell her everything

Madison:                you have so much more to worry about may i promise you

After Minor Victim 4 threatened to call law enforcement, Madison wrote:

Madison:                bitch if you dont start slitting your thighs i promise im going to make sure your mom knows what you do

Madison:                stupid whore

Madison:                watch

## Minor Victim 5:

Madison exploited Minor Victim 5 in 2025, including in August 2025. Minor Victim 5 was 15 years old at the time. Madison communicated with Minor Victim 5 on Telegram and Discord, where he used the Discord account "purgethemundanes." Madison coerced Minor Victim 5 to stream sexually explicit videos depicting her using her hand to touch her exposed genitals.

Madison's chats with Minor Victim 5 included group chat discussions where Minor Victim 5 discussed cutting herself. In one series of these group chats in August 2025, Minor Victim 5 said that she was in school at the time of the chat, and she stated, "i wanna pull up my sleeve but my whole arm is red" "because of … the cuts."

The following videos depicting Madison exploiting Minor Victim 5 were located in Madison's iCloud account (the search of this is discussed further below):

- A video file titled, "-1223292174282966172.mp4": The video is a recording of a live video chat between Madison and Minor Victim 5 that includes Minor Victim 5's username and Madison's user name, "Leo." The video depicts Minor Victim 5 naked, sitting on a bed with her knees bent and her genitals exposed. Madison instructs Minor Victim 5 as follows:

    "Now listen, I want you to spread your legs again. Place your hand down onto your pussy. I want you to rub your clit for me. Very good. Keep going. Good. Good. You're doing so good for me."

The video then depicts Minor Victim 5 using her hand to touch her exposed genitals.

6

Rev. August 2018

- A video file titled, "-3146014577452858084.mp4." The video is a recording of a live video chat between Madison and Minor Victim 5 that includes Minor Victim 5's username and Madison's user name, "Leo." The video depicts Minor Victim 5 naked, sitting on a bed with her knees bent as she digitally penetrates her vagina. Towards the end of the recording, the computer profile name "slushy roger" is visible.

### Minor Victim 6:

Madison exploited Minor Victim 6 in September 2025 using the encrypted application Telegram. Minor Victim 6 was 15 years old. Madison coerced Minor Victim 6 to stream sexually explicit videos depicting her using her hand to touch her exposed genitals.

The following files depicting Madison exploiting Minor Victim 6 were located in Madison's iCloud account (the search of which is discussed further below):

- A video file titled, "ScreenRecording_09-05-2025 16-43-31_1. The video is a live video chat between two users, and one user has the camera turned off. The video depicts Minor Victim 6 masturbating her exposed genitals, with her Telegram display name visible at the end of the recording.

- A screenshot image file depicting Minor Victim 6's Telegram display name, username, and phone number. The screenshot also depicts images that were exchanged, including images depicting a leg with cuts on it, and red writing on a wall that says "Leo hates ur religion."

- A screenshot image file depicting a Telegram chat between Minor Victim 6 and another user. In the screenshot, Minor Victim 6 provided her PayPal account information to the other user.

### Minor Victim 7:

Madison exploited Minor Victim 7 between at least September 4, 2025 and September 17, 2025. Minor Victim 7 was 14 years old at the time and Madison was aware that Minor Victim 7 was 14 years old at the time. Madison communicated with Minor Victim 7 on Telegram and Discord, where he used the account baphome1. Madison told Minor Victim 7 that his name was "Leo." Madison coerced Minor Victim 7 to stream sexually explicit videos.

Madison's Discord account baphome1 included a chat conversation between Madison and Minor Victim 7. Below is an excerpt from that conversation, which took place between September 4, 2025, and September 17, 2025:

| | |
|---|---|
| Madison: | is your father home? |
| Minor Victim 7: | Yes unfortunately |
| Madison: | ah i see |

7

Rev. August 2018

| Minor Victim 7: | Leo I should give you his schedule |

\*\*\*

| Madison: | hi [Minor Victim 7's name] |

\*\*\*

| Minor Victim 7: | Why u leak me 2 melt |
| | also why ru sending shit 2 abuse |
| | He has stuff to leak mr now |
| | Thanks for putting me in bad positions |

\*\*\*

| Minor Victim 7: | Melts leading me |
| | Make it stop |
| | Pls |
| | He showing the cat video thing |

The following files were located in Madison's iCloud account:

- Multiple videos depicting Minor Victim 7 naked from the waist down with her genitals and pubic area partially covered by a pillow. In at least two of the videos, Minor Victim 7's name is visible at the top of the recording. The titles of the videos all begin, "ScreenRecording_09-05-2025." Some of the video files depict cuts on Minor Victim 7's arms and legs.

- Multiple image files depicting Minor Victim 7 naked from the waist down with her genitals exposed. Some of the image files depict cuts on Minor Victim 7's arms and legs.

- A video file titled "-6463063294923507267." The video is a recording of a live Discord call between Minor Victim 7 and Madison. The username "Leo" appears on the recording. The video, which was recorded in Minor Victim 7's bedroom, depicts Minor Victim 7, whose face is not visible, throwing a cat against the wall.

- An image file titled "IMG_7581.png." The image is a screen capture of a Telegram chat with Minor Victim 7, whose username is visible. In the chat, Minor Victim 7 says that she is 14 years old.

**Minor Victim 8:**

Madison exploited Minor Victim 8 starting no later than December 2024 and continuing through at least September 2025. Minor Victim 8 was 13 years old at the time and Madison ~~was eventually~~ *became* aware that Minor Victim 8 was 13 years ~~old during the time she had contact with Madison.~~ *they started communicating.* *madison became aware of Minor victim 8's real age when she was 14.*

8

Madison communicated with Minor Victim 8 using Roblox, Snapchat, and Discord. Madison used a variety of Discord usernames and accounts including rwaping, and others. Using those accounts, Madison coerced Minor Victim 8 to stream sexually explicit videos depicting sex acts, and videos depicting self-harm. Madison's iCloud account includes the following:

- A video depicting Minor Victim 8 holding up a sign that reads, "1378 Leo"

- A video of Minor Victim 8 placing a numerous pills into her mouth as Madison demands that she confirm that she swallowed all of the pills;

- 2 videos depicting Minor Victim 8 using an object to masturbate her exposed genitals.

Madison's messages to Minor Victim 8 also included his encouraging Minor Victim 8 to "think about killing urself," encouraging her to "take the pills," demanding that she expose her genitals on video, and threatening to send the sexually explicit videos she created to her mother and to her school. Madison's messages to Minor Victim 8 included the following:

February 2, 2025:

| Madison | Do it |
|---------|-------|
| Madison | Take the pills |

| Madison | Iâ€™m not mad nigga Iâ€™m seeing [Minor Victim 1] tomorrow |
|---------|-------|
| Madison | ðŸ˜ , |
| Madison | Anyways |
| Madison | Send me pictures |
| Madison | U r |
| Madison | Ur ugly asf |
| Madison | But u hate taking pics |
| Madison | ^ |
| Madison | So hurry up slut |
| Madison | And think about killing urself |
| Madison | Iâ€™d love u if u did |
| Madison | |
| Madison | Fucking nigger |
| Madison | I never loved u |

9

Rev. August 2018

| Madison | Talk now |
|---|---|
| Madison | Or Iâ€™m going 2 send ur mom ur nasty unshaved pussy |

| Madison | Do it lmao just watch what happens whore |
|---|---|
| Minor Victim 8 | or do u wanna throw ur life away over a 13 year old girl |
| Madison | Uu donâ€™t have 2 worry about letting anyone down trust me |

| Madison | I am going 2 come 2 u |
|---|---|
| Madison | So u better fucking hope they get me |

On February 3, 2025:

| Madison | Iâ€™m going 2 call u |
|---|---|
| Madison | U r going 2 turn ur camera on |
| Madison | |
| Minor Victim 8 | y u ain't respond |
| Madison | |
| Madison | Fuck u |
| Madison | <@1260333949109010482> |
| Madison | I fucking hate u |
| Minor Victim 8 | idk why |
| Madison | Ur fucking trash thatâ€™s y |
| Minor Victim 8 | no |
| Madison | Yeah ur fucking garbage |
| Madison | |
| Madison | Play with ur pussy and donâ€™t put ur face in view |
| Madison | Ok bitch |

| Minor Victim 8 | imm cookeddd |
|---|---|
| Madison | Itâ€™s cool lol bro when ur mom bust through ur door and takes ur shit |
| Minor Victim 8 | im cooked bro |

10

| | |
|---|---|
| Madison | And ur dad ridicules u for being a slut think about how u should've kept ur mouth shut |
| Madison | And when everyone around the school is talking about ur nudes |
| Madison | Think about how u should've stfu |
| Minor Victim 8 | help so liam |
| Minor Victim 8 | when the fbi comes busting through ur door |
| Minor Victim 8 | think abt |
| Madison | ðŸ'€ |
| Minor Victim 8 | how u shouldve let a 13 yr old girl alone |
| Madison | Sure |
| Minor Victim 8 | jk bae i love u tm 2 do that |
| Madison | The lies r insane |

**Minor Victim 9:**

Madison exploited Minor Victim 9 between in August 18, 2025 and August 20, 2025. Minor Victim 9 was 13 years old during the time she had contact with Madison. Madison communicated with Minor Victim 9 using the Discord account "purgemundanes." Using Discord, Madison coerced Minor Victim 9 live stream video of Minor Victim 9 topless, cutting her tongue with a razor. Madison recorded the conduct and distributed the conduct to another Discord user (referred to as "Discord User" below). After Madison distributed the image to the other Discord user, they engaged in the following chat:

Discord User:       Leo u made her cut?

Madison:            yeah for free

Discord User:       where?

Madison:            tits

Discord User:       ur name?
                    or sthn else

Madison:            i mean she cut jer tongue myb
                    and spit blood on her tits

Discord User:       howd u get her to cut

Madison:            she loves me

Rev. August 2018

just love bombed her for like a few hours:

Discord User:     nigga she loves everyone

Madison:          and asked her to do it
                  yeah ik shes ez [in this context, this phrase was intended to mean
                  "yeah I know she's easy"]

**Minor Victim 10:**

Madison exploited Minor Victim 10 between August 20, 2025 and August 21, 2025. Madison was aware that Minor Victim 10 was 14 during the time she had contact with Madison. Madison communicated with Minor Victim 10 using the Discord account "purgemundanes." Using Discord, Madison coerced Minor Victim 10 to live stream sexually explicit videos depicting Minor Victim 10 using her hand to touch her exposed genitals.

Madison engaged in the following chat with Minor Victim 10 (the below is excerpted from a Discord chat between Madison and Minor Victim 10 on August 20, 2025 and August 21, 2025):

Minor Victim 10:     leo

Madison:             Wsp
                     lets call

Minor Victim 10:     ok

\*\*\*

Madison:             I am very proud of you
                     You've done so good for me

Minor Victim 10:     oki

Madison:             How old are you

Minor Victim 10:     14

Madison:             Ok you will be fine

Minor Victim 10:     im laying down

Madison:             Good
                     I think you looked beautiful

Minor Victim 10:     we call

12

Madison:               Yes

***

Madison:               Keep making them
                       Do not stop
                       In the next one you send finger it really fast
                       And moan my name

Minor Victim 10:       i cum

Madison:               Yes show me

***

Madison:               Did you record you cumming

Minor Victim 10:       ok

## Victim 11:

In April 2025, Madison contacted Minor Victim 11 on Instagram. Madison told Minor Victim 11 that he had the sexually explicit videos that she sent him 4 years earlier, when she was 16 years old. Madison threatened to disseminate the videos if Minor Victim 11 did not send him new depictions of her engaged in sexually explicit conduct. Madison sent the following messages using the Instagram account "Trackmeguys" (the emoticon in the below quotations matches emoticon appearing in the actual communications):

- "How would u like 2 see ur ugly ass girlfriend play with her pussy and Nipples for em"
- "😂 I guess I'm bluffing does her pussy still bleed when she gets penatrated?"
- "i have that video that [another person's name] had of you using the dildo And then you started bleeding"
- "I got it from a while ago I was just bored today so i decided to bother you"
- "i have no patience for this so if u r not going 2 do it i willl just send it 2 [Victim 11's boyfriend]"
- "And let him see for himself u fucking urself like a little dog"
- "U rather go through the embarrassment all over again"
- "what if i got [another person's name]"
- "What if i dm [another person's name]"
- "And he comes 2 u instead"
- "Like he leaks u"
- "Whatever im not going to sit here and go back and fourth with u"
- "R u sending them or not"
- "I want 2 see that phat tight pussy u have"
- "So send it

13

Rev. August 2018

- "And ill leave"
- "I want 2 spead ur pussy lips open and suck ur beautiful clit"
- "And then slap my dick onto ur pussy"
- "While holding ur throat"

## Madison's iCloud Account:

On September 17, 2025, a federal search warrant was executed on Apple for Madison's iCloud account, emadison519@icloud.com and DS ID: 21141624151. The files described above were located during the search of the files contained in Madison's account. The iCloud account included the files referenced above, as well as the following:

- Numerous screenshot image files of Minor Victim 1 in the deleted folder. The images depict Minor Victim 1, clothed, taking a selfie in a mirror by herself, and taking a selfie with another male.

- Numerous images and videos where the name "Leo" was observed, including a video titled, 9202854341222041349.mp4. The video depicts red writing on a wall that read, "Leo 764 skin creep bleach dawn," and "I gave my soul to Leo." The video also depicts images of numerous females with the word "Leo" written on their bodies in red.

- Images and videos that included depictions of Baphomet.

- Numerous images depicting Madison.

## November 6, 2025 Search Warrants:

On November 6, 2025, a federal warrant was executed at Madison's residence in Baltimore County, Maryland and on his person. During the search of Madison's bedroom, several documents were located, including documents with the words: "Horror House," "Leo," "NMK," and "Heil Satan."

The following digital devices were seized during the searches on November 6, 2025:

- White Apple iPhone 15, S/N: JVQ3QHWDH2 (seized from Madison's person);

- Cyber Power PC model C Series CEC model, C545021MB478119 (from Madison's bedroom); and

- Black Apple iPhone SE, s/n: CLQ5MW126D.

The username of the Cyber Power PC at the login screen was "slushy roger."

Madison's iPhone 15 was manually reviewed during the search and found to include passwords for Madison's Roblox and Discord accounts, as well as email addresses and phone numbers that Madison used to communicate with the minor victims and/or other Discord users.

14

The images and videos described above were produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer. The phones and computers used by Madison to coerce and entice the victims to engage in sexually explicit conduct and to engage in self-harm were made outside of Maryland. Madison used a facility and means of interstate commerce, to persuade, induce, entice, and coerce the victims listed above to engage in sexual activity, and that he could have been charged with a criminal offense for that activity.

With the exception of Minor Victim 1, the minor victims described above were located outside of Maryland, and Madison exploited the minor victims using computers and the internet in the District of Maryland.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
Erik Lee Madison

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Maggie Grace, Esq.
Counsel for Defendant

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Christina Wong, Esq.
Counsel for Defendant

15

Rev. August 2018